IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BROADWIND, INC, AND BROADWIND HEAVY FABRICATIONS, <br><br> Plaintiffs <br><br> v. <br><br> FIRST NATIONAL CAPITAL, LLC, <br><br> Defendant. | Case No.: <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES Plaintiffs BROADWIND HEAVY FABRICATIONS, formerly known as BROADWIND TOWERS, INC, and BROADWIND, INC. (hereinafter collectively referred to as "Broadwind" or "Plaintiffs"), by and through their attorneys, Joseph P. Carlasare and Ronald D. Balfour of Amundsen Davis, LLC, and for their Complaint against FIRST NATIONAL CAPITAL, LLC ("FNC"), state as follows:

### INTRODUCTION

1. This is an action for breach of contract and a declaratory judgment regarding a settlement agreement reached on June 19, 2023.

2. Broadwind seeks a judicial determination that a valid settlement agreement was entered into between Plaintiffs and Defendant.

3. Broadwind seeks injunctive relief, specifically a stay of the pending JAMS Arbitration currently set for December 18, 2023, as well as any further dates set in that proceeding, as that matter was fully resolved by the settlement agreement.

4. Broadwind further seeks damages for Defendant's breach of the settlement agreement.

5. Finally, Broadwind seeks a declaratory judgment it has no further obligations to Defendant under applicable Lease Documents, as such obligations were discharged by the. settlement agreement.

## THE PARTIES

6. Broadwind Inc. is incorporated in the state of Delaware with its principal place of business in Illinois. Broadwind Inc. has a one-hundred percent ownership interest in Broadwind Heavy Fabrications, Inc.. Broadwind Inc.'s management controls all major decisions regarding the dispute between First National Capital, LLC and Broadwind Heavy Fabrications, including the settlement agreement that is the subject of this Complaint. Broadwind Inc. is guarantor of Broadwind Heavy Fabrications, Inc.

7. Broadwind Heavy Fabrications, Inc., formerly known as BROADWIND TOWERS, INC, is domiciled in the state of Wisconsin and is wholly owned subsidiary of Broadwind, Inc.

8. First National Capital, LLC ("FNC") is a limited liability company with its principal place of business in the State of Texas.

9. According to the Texas Secretary of State, First National's registered agent is National Registered Agents, Inc. located at 1999 Bryan St. Suite 900 Dallas, TX 75201.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action between citizens of different states.

11. Jurisdiction of this Court is also founded on 28 U.S.C. §§ 2201 and 2202 as a request for relief under the Declaratory Judgment Act.

12. This Court has personal jurisdiction over FNC as it does business with individuals and entities in the State of Illinois and specifically negotiated and accepted, through counsel, a settlement agreement with individuals residing and located in Illinois. Plaintiffs' causes of action arise out of and relate to that settlement agreement.

13. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391 because the causes of action accrued in this District. Specifically, Defendant entered into the settlement agreement at issue (See Exhibit B-F) with Broadwind, whose principal place of business is in the Northern District of Illinois. The settlement agreement, from which Plaintiff's claims arise, was formed when Broadwind accepted FNC's offer in the Northern District of Illinois.

## FACTS COMMON TO ALL COUNTS

14. Broadwind entered into a Master Equipment Lease Agreement dated March 23, 2016, as amended, and Equipment Schedule 02 thereto dated July 17, 2018 (hereinafter "the Lease"), as amended, with First National Capital ("FNC"). A copy of the applicable "Leasing Documents" is attached hereto as Group Exhibit "A."

15. On or about July 17, 2018, FNC purchased the four gantry cranes for $650,000. Schedule 02 relates to the transaction that is the subject of this dispute involving the gantry cranes. See Group Exhibit A. Gantry cranes are large, overhead cranes that effectively become fixtures of the physical location where they stand; they are not easily fungible or transportable.

16. To date, FNC has been paid approximately $927,120 on lease payments over 48 months.

17. In early 2022, Broadwind notified FNC that it wished to exercise its contractual option to buy the gantry crane equipment on site that was the subject of Schedule 02 of the Leasing Documents.

18. FNC refused to honor the purchase option set forth in the Leasing Documents.

19. As a result, a dispute arose. Broadwind exercised its right pursuant to the terms of Lease Documents to file an arbitration in JAMS (JAMS Ref. No. 1310025727, hereinafter the "JAMS Arbitration").

20. After extensive discovery during the JAMS Arbitration, as the arbitration hearing approached, the Parties were able to resolve the dispute.

21. Specifically. on June 19, 2023, two days before the arbitration was set to proceed, the Parties reached a settlement.

22. The following is the sequence of written communications that led to the settlement agreement. On June 16, 2023, Counsel for FNC wrote to Counsel for Broadwind:

> Eric,
>
> Thanks for your patience.
>
> The following is the counter I was able to get out of FNC today, which includes 2 alternatives. I don't believe there will be another.
>
> Alternative 1: **FNC would finance the settlement payment of $866,513.60 over 12 months at an interest rate of 0.0%. The monthly payment by B'wind would be $72,209.47 per month for 12-months.** FNC would retain its ownership and maintain its security interest in the equipment during this time frame. **Upon repayment in full, Broadwind would remit any sales and / or property taxes due and title to the assets would be transferred as is, where is**. There would be a stipulated award to this effect, plus mutual releases & non-disparagement clause.
>
> Alternative 2: FNC would accept a cash settlement payment of $816,513.60 from B'wind by June 23, 2023, with hearing continued pending payment, after which all claims dismissed with prejudice. Upon receipt of payment in full, Broadwind would remit any sales and / or property taxes due and title to the assets would be transferred as is, where is. Again, mutual releases and non-disparagement.
>
> This counter will remain open until Monday [June 19, 2023].
>
> Thank you for your attention to this matter.

See Exhibit "B." (emphasis added).

4

23. Also on June 16, 2023, Counsel for Broadwind replied:

> Hi Larry-
>
> Our client is giving careful consideration to your client's proposals. Because there are a number of decision makers, we need a bit more time to make sure everyone has input. I'll get back to you as soon as I can tomorrow for sure.
>
> Have a good evening.

See Exhibit "C."

24. On the evening of June 19, 2023, Counsel for Broadwind wrote:

> Hi Larry:
>
> **Happy to report that our client has accepted Option #1, and shall pay $72,209.47 for 12 months.**
>
> My client wanted to confirm that it can still make repairs to the cranes during this period. Kindly confirm. My client also would like the payments to begin on September 1, because of public company reporting. Kindly confirm.

See Exhibit "D." (emphasis added).

25. Fewer than thirty minutes after Counsel for Broadwind accepted FNC's offer, Counsel for FNC wrote to confirm the settlement:

> Eric I have now spoken to FNC's president. They are willing to let payments begin no later than August 1st otherwise same terms. And yes Broadwind can make repairs to the cranes during the 12 month period.
>
> **Are we settled as per the other terms of the Alt. 1 counter below (which i remind will include a stipulated award for the $866k held by FNC in case of a default)?**

See Exhibit "E." (emphasis added).

26. Later on the evening of June 19, 2023, Counsel for Broadwind confirmed the settlement:

> **Yes, sir. We are settled per your last email**.
>
> I look forward to our call tomorrow with the judge (I think he'll be the happiest).
>
> Thanks again for your assistance.

5

>I leave it to you and Joe to draft it up. I'm happy to assist as needed.
>
>Best Regards,
>Eric M. Fogel

See Exhibit "F." (emphasis added).

27. Following the settlement, the arbitration was canceled.

28. Thereafter, FNC's Counsel drafted a written settlement agreement that added a material term to the settlement.

29. Specifically, FNC claimed it was entitled to retain the security deposit.

30. The Lease Documents provided for an initial term of thirty-six months with monthly rent payments of $19,335.55 and a security deposit of $58,006.65 (the "Deposit") placed by Broadwind with FNC.

31. FNC's settlement demand that Broadwind accepted stated that the totality of the payments to FNC was to be $866,513.60 over 12 months, which amounted to $72,209.47 for twelve (12) months.

32. As documented by Exhibits B-F to this Complaint, there was no term of the settlement agreement that permitted FNC to retain the deposit.

33. To the contrary, a return of Broadwind's deposit was part of a leasing agreement whose terms and conditions require the *return* of the deposit upon the conclusion of the lease.

34. By arguing for that it is entitled to retain the deposit, FNC is contradicting its own Leasing Documents. See Group Exhibit A.

35. Instead of honoring the settlement agreement, FNC has attempted to reinstate the JAMS Arbitration.

36. JAMS has set an arbitration of this matter for December 18, 2023.

37. FNC has breached its settlement agreement with Broadwind.

38. "[P]arties to a contract may or may not require, as part of their agreement, that there be a written document setting forth the terms of their settlement before such a settlement can be reached." *Lambert Corp. v. Evans*, 575 F.2d 132 (7th Cir. 1978)).

39. In the instant matter, during the Parties' negotiations, neither side set forth a requirement that an agreement needed to be reduced to writing in order for the settlement to be enforceable.

40. Because the parties did not set forth any such requirement during their negotiations, their oral agreement is enforceable without being reduced to a written agreement. See *Taylor v. Gordon Flesch Co.*, 793 F.2d 858, 862 (7th Cir. 1986).

41. Under federal common law, an oral settlement agreement is enforceable provided that the terms of the agreement are reasonably certain. See *Taylor*, 793 F.2d at 862 (7th Cir. 1986) ("[U]nder federal law, oral settlement agreements are enforceable"); *Pritchett v. Asbestos Claims Mgmt. Corp.*, 773 N.E.2d 1277, 1282 (Ill. App. Ct. 2002) (enforcing an oral settlement agreement under Illinois law and ruling that "ambiguity will prevent the enforcement of a contract only where the ambiguity affects the material terms of the contract.")

42. Further, a settlement agreement is enforceable *even* when parties fail to agree on an acceptable draft of a written release. *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 337 (7th Cir. 2000) ("[T]he belief of some litigants in pursuing settlement of their claims that they can change their mind at any time before they actually sign the settlement agreement is often unfounded in law.")

## COUNT I – BREACH OF CONTRACT

43. Broadwind incorporates Paragraphs 1 to 42 as if fully set forth herein.

44. Broadwind has (*or stands ready to*) performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the settlement agreement.

45. Broadwind had performed all conditions of the applicable June 19, 2023 settlement that it was required to perform when it received notice of FNC's repudiation of the settlement agreement.

46. Broadwind has offered to make payments as per the agreed terms of the settlement agreement, specifically the first option that included financing the settlement payment over 12 months.

47. Despite Broadwind's compliance and readiness to fulfill the terms of the settlement agreement, FNC has refused to honor the agreed-upon terms.

48. FNC's refusal constitutes a breach of the settlement agreement.

49. Specifically, FNC's insistence on retaining the security deposit, contrary to the terms of the settlement and the Lease Documents, is a breach.

50. FNC's actions, including seeking to reinstate the JAMS Arbitration and refusing to comply with the settlement terms, further constitute a breach of the settlement agreement.

51. As a direct and proximate result of FNC's breach, Broadwind has suffered damages.

52. Broadwind seeks recovery of all damages as provided by law, in excess of $75,000, resulting from FNC's breach, including but not limited to any financial losses, interest, costs, and attorney's fees.

53. Broadwind will suffer irreparable harm if it is required to appear at the arbitration on December 18, 2023 as there exists the potential for a judgment that is far in excess of the amount agreed to under the settlement agreement.

54. Broadwind will arguably lose its contractual right to settlement and release of the claims against it if it is required to participate in the December 18, 2023 arbitration.

## COUNT II – DECLARATORY JUDGMENT – SETTLEMENT AGREEMENT

55. Broadwind incorporates Paragraphs 1 to 54 as if fully set forth herein.

56. Broadwind seeks a declaratory judgment to determine and declare the rights and obligations of the Parties under the settlement agreement reached on June 19, 2023.

57. The settlement agreement, as accepted by both Parties, involved specific terms regarding the payment schedule and the rights to the leased equipment.

58. Despite Broadwind's acceptance of the settlement terms and readiness to comply, FNC has advised that it will not comply with the agreed terms, instead insisting on additional material conditions such as the retention of the security deposit.

59. FNC's actions have created ambiguity and uncertainty regarding the status and enforceability of the settlement agreement.

60. Broadwind requests that this Court declare the settlement agreement as binding and enforceable in its original form, as agreed upon by the Parties in written correspondence on June 19, 2023. See Exhibits B-F.

61. Specifically, Broadwind seeks a declaration of the Parties' obligations under the settlement agreement as set forth in Exhibits B-F.

62. Broadwind seeks a further declaration that FNC is required to adhere to the terms of the agreement without imposing additional conditions.

63. Broadwind requests the Court to declare that FNC's insistence on retaining the deposit is not in accordance with the terms of the settlement agreement and that the deposit must be returned to Broadwind after all payments have been made.

64. Broadwind requests the Court enter an order compelling FNC to abide by the terms of the settlement agreement.

65. The Court has jurisdiction to hear this claim and to issue a declaratory judgment under 28 U.S.C. § 2201(a), which provides that in "a case of actual controversy within its jurisdiction," any court of the United States may declare the rights and other legal relations of any interested party.

66. The determination of whether the Parties entered into a valid settlement agreement is for the Court and not an arbitrator to resolve.

67. Broadwind requests a judicial declaration of the settlement agreement (as set forth in Exhibits B-F) and a finding that any further arbitration is moot as the Parties have released all claims by and between them.

68. Broadwind requests a declaration that the June 19, 2023 settlement agreement is not subject to arbitration.

**COUNT III – PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF – STAYING/DISMISSING THE JAMS ARBITRATION (JAMS REF. NO. 1310025727)**

69. Plaintiff incorporates Paragraphs 1 to 68 as if fully set forth herein.

70. Courts in this District may grant injunctive relief when a party moving for a preliminary injunction demonstrates that: (1) it has a reasonable likelihood of success on the merits of its claim; (2) there is no adequate remedy at law; (3) it will suffer irreparable harm if injunctive relief is not granted, and that that harm outweighs the harm the opposing party will suffer if the motion is granted; and that (4) the injunctive relief will not harm the public interest. *Duthie v. Matria Healthcare, Inc.*, 535 F.Supp.2d 909, 914 (N.D. Ill. 2008).

71. Despite the settlement of the Parties, FNC has continued to press for an arbitration, which is currently set for December 18, 2023.

72. Broadwind objected to this hearing being set.

73. The settlement agreement reached between the Parties is not subject to arbitration.

74. The Supreme Court has determined that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. See *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

75. Broadwind requests this Court stay the arbitration, pending as JAMS REF. NO. 1310025727, until it has determined whether there is a valid settlement agreement between the parties.

76. Broadwind has exhausted all efforts at convincing FNC to abide by the terms of the agreement upon settlement.

77. Broadwind has a strong likelihood of success on the merits in this case because Exhibits B-F of this Complaint demonstrate an unambiguous settlement agreement between the parties.

78. Broadwind has no adequate remedy at law because requiring Broadwind to arbitrate the substantive dispute between the parties would force a potential relinquishment of its rights under the settlement agreement.

79. Broadwind would suffer irreparable harm because requiring a party to arbitrate a dispute it has not agreed to arbitrate (because there is a valid settlement agreement with no arbitration provision) is *per se* irreparable harm. *Chicago Sch. Reform Bd. of Trs. v. Diversified Pharm Servs., Inc.*, 40 F. Supp.2d 987, 996 (N.D. Ill. 1999).

80. The threatened injury to Broadwind should a preliminary injunction not issue outweighs any harm to FNC from the granting of a preliminary injunction as Broadwind arguably would be required to relinquish its settlement agreement whereas any harm to FNC would be adequately compensated by money damages.

81. The granting of a preliminary injunction would not undermine the public interest because while public policy favors arbitration, it only does so when the parties have agreed to arbitrate. The Parties did not agree to arbitrate the settlement agreement entered into in June of this year, and the settlement agreement makes any further arbitration of the underlying dispute moot..

82. Broadwind is entitled to preliminary and permanent injunctive relief staying the arbitration of underlying dispute until this Court can rule on settlement agreement.

### Prayer for Relief

WHEREFORE, Broadwind pray for judgment against defendants as follows:

### Temporary Restraining Order and Preliminary Injunction

A. Injunction as to JAMS: Broadwind seeks an order directing JAMS that the arbitration currently pending in JAMS REF. NO. 1310025727 is stayed pending the Court's determination in this lawsuit and vacating all dates currently scheduled in the arbitration. Broadwind further requests an order declaring that JAMS does not have jurisdiction to hear any disputes regarding the settlement agreement reached on June 19, 2023.

B. Injunction as to FNC: Broadwind seeks an order barring FNC from participating in the arbitration currently pending in JAMS REF. NO. 1310025727 until the issues in this suit have been resolved.

### Other Relief

A. Ordering compensatory damages for breach of contract in excess of $75,000 for fees and costs incurred (as well as those that will be incurred in the event the arbitration proceeds at JAMS).

B. Declaratory relief finding that:

    i. The settlement agreement of June 19, 2023 is not subject to arbitration.

ii. The specific terms in the settlement agreement are set forth in Exhibit B-F and no further material terms may be added by the Parties.
iii. Broadwind is entitled to a return of its security deposit when all amounts under the settlement agreement are paid.
iv. Broadwind has no further obligations to FNC other than those set forth in Exhibits B-F and all other claims between the Parties have been extinguished.
v. The specific terms in the settlement agreement as set forth in Exhibit B-F are binding and enforceable as a matter of law.
vi. Broadwind is entitled to recover all costs and attorneys' fees incurred herein.
vii. FNC is not entitled to any judgment entered by the arbitrator on December 18, 2023 (or any other date) given that the matter was resolved by settlement on June 19, 2023.
viii. Broadwind is entitled to reimbursement by FNC of any fees it was forced to pay in JAMS after June 19, 2023 due to FNC's breach of the settlement agreement.
ix. Broadwind is entitled to incidental relief to the above, damages in favor of Broadwind, together with interest, costs, and attorneys' fees.

C. Awarding Plaintiffs pre-judgment interest;

D. Awarding Plaintiffs its costs and expenses incurred in this action;

E. Granting such other and further relief as this Court may deem just and proper.

Respectfully submitted,

By: s/ Joseph Carlasare

Attorney for Plaintiffs

**Amundsen Davis, LLC**
Joseph P. Carlasare  #6308706
Ronald D. Balfour   #6307658
150 North Michigan Avenue, Suite 3300
Chicago, IL 60601
P: 312.894.3200
F: 312.894.3210
jcarlasare@amundsendavislaw.com
rbalfour@amundsendavislaw.com